# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| WILLIAM MIGNIN, III, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> MARS, INCORPORATED, <br><br> Defendant. | Case No. 1:22-cv-04243 <br><br> The Hon. Virginia M. Kendall <br><br> The Hon. Beth W. Jantz |

## DEFENDANT MARS, INCORPORATED'S MOTION TO DISMISS

Dated: September 30, 2022

Respectfully submitted,

**SCHARF BANKS MARMOR LLC**
/s/ *George D. Sax*
George D. Sax (No. 6279686)
333 W. Wacker Dr. Suite 450
Chicago, Illinois 60606
Tel.: (312) 726-6000
Email: gsax@scharfbanks.com

**WILLIAMS & CONNOLLY LLP**
Stephen D. Raber (*pro hac vice*)
Liam J. Montgomery (*pro hac vice*)
Ramon J. Ryan (*pro hac vice*)
680 Maine Avenue, SW
Washington, DC 20024
Telephone: 202-434-5000
Facsimile: 202-434-5029
Email: sraber@wc.com
 lmontgomery@wc.com
 rryan@wc.com

*Attorneys for Defendant Mars, Incorporated*

FDA has determined that "titanium dioxide may be safely used for coloring foods generally" when the "quantity of titanium dioxide does not exceed 1 percent by weight of the food." 21 C.F.R. § 73.575(c)(1). FDA never has deviated from that conclusion. FDA also specifies how manufacturers must declare coloring additives like titanium dioxide ("TiO2") in food labeling: The "label of a food to which any coloring has been added shall declare the coloring in the statement of ingredients in the manner specified in paragraphs (k)(1) and (k)(2)" of 21 C.F.R. § 101.22(k). Plaintiff does not even cite these regulations, let alone allege that Mars violates them in any way.

Instead, Plaintiff alleges that TiO2 should be removed from SKITTLES® products altogether because he and others disagree with FDA's conclusion that TiO2 is safe. He alleges that the products are unsafe but does not allege that he or anyone else has actually suffered any physical injury from consuming the product. He also does not allege that he or anyone else faces a substantial risk of future adverse health consequences. He does not (and cannot) allege that the concentration of TiO2 in SKITTLES® products exceeds FDA's authorized threshold, and he does not identify any comparable product he would have purchased instead that he contends is cheaper or safer. He merely alleges, ignoring FDA's own findings, that TiO2 has the "potential" to accumulate in the body and "could" cause certain health effects. Plaintiff further alleges that the labeling of SKITTLES® products misleads consumers because it fails to disclose that the products are unsafe, notwithstanding FDA's contrary conclusion.

The Complaint should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Plaintiff's claims are preempted by federal law. The claims depend entirely on this Court finding that TiO2 is unsafe—in direct conflict with FDA's determination that TiO2 is safe. Second, Illinois's safe harbor provisions bar the claims because the Illinois Food, Drug and Cosmetic Act expressly permits the use of TiO2 in food and specifies the manner in which TiO2 "shall" be declared in the labeling, and Mars complies with those legal requirements. Third, Plaintiff lacks Article III standing because he fails plausibly to allege he suffered any economic or physical injury or has any increased risk of health problems in the

1

future. Plaintiff also lacks standing to seek injunctive relief because he can ascertain whether SKITTLES® contain TiO2 simply by reviewing the label. Finally, the Complaint fails to state a claim because Plaintiff does not plausibly allege deception.

## FACTUAL BACKGROUND

**A.     Congress and FDA Regulate Color Additives in Food.**

The Food, Drug, and Cosmetic Act ("FDCA") prohibits the sale of "adulterated" foods, including any food that "bears or contains[] a color additive which is unsafe." 21 U.S.C. §§ 331(a), 342(c). It delegates to FDA that safety determination, providing that a color additive may be used only if FDA has issued regulations "prescribing the conditions under which such additive may be safely used." 21 U.S.C. § 379e(a)(1)(A). FDA must determine that "the data before [FDA] establish that such use, under the conditions of use specified in the regulations, will be safe," *id.* § 379e(b)(4), where "safe" means "there is convincing evidence that establishes with reasonable certainty that no harm will result from the intended use of the color additive," 21 C.F.R. § 70.3(i).

To determine whether a color additive is safe, FDA must "consider, among other relevant factors," "the probable consumption of, or other relevant exposure from, the additive" and "the cumulative effect, if any, of such additive in the diet of man." 21 U.S.C. § 379e(b)(5)(A). FDA cannot determine a color additive is safe "if the additive is found by the [FDA] to induce cancer when ingested" or if "the data . . . show that" use of the additive "would promote deception of the consumer . . . or would otherwise result in misbranding or adulteration." *Id.* § 379e(b)(5)(B), (b)(6). If FDA approves a color additive for use, manufacturers must still "certif[y]" that each color additive meets FDA's regulatory requirements unless FDA also determines certification is not "necessary in the interest of the protection of the public health." *Id.* § 379e(c).

**B.     FDA Regulates TiO2 in Food.**

FDA has determined that along with TiO2, 21 C.F.R. § 73.575, a number of other substances can be safely used to color foods, including such things as iron oxide, *id.* § 73.2250, and calcium carbonate, *id.* § 73.70. TiO2 is an opaque white powder that for a century has been

used as a color additive in foods as varied as pastries, milk, salad dressing, sauces, snacks, coffee creamers, and cake decorations. Pursuant to its obligations under the FDCA, FDA has determined that "titanium dioxide may be safely used for coloring foods generally," but requires that it "not exceed 1 percent by weight of the food." 21 C.F.R. § 73.575(c)(1). It has further determined that TiO2 batches are exempt from certification because it "is not necessary for the protection of the public health." Id. § 73.575(e).

Labeling of TiO2 as an ingredient in food is governed by 21 C.F.R. § 101.22(k)(2). According to that provision, "[c]olor additives not subject to certification"—including TiO2— "may be declared as 'Artificial Color,' 'Artificial Color Added,' or 'Color Added' (or by an equally informative term that makes clear that a color additive has been used in the food)," or "[a]lternatively, such color additives may be declared as 'Colored with ___' or '___ color." Id.

### C. SKITTLES® Complies with FDA Regulations.

Like many other food products, SKITTLES® contain small amounts of TiO2 as a color additive. Plaintiff does not, and cannot, allege that the composition and quantity of TiO2 in SKITTLES®, or its labeling, fails to comply with FDA regulations. Further, the ingredients statement on SKITTLES® voluntarily and expressly discloses TiO2 by name as a color additive:



Ex. A.[1]

### D. Plaintiff's Complaint.

This is a copycat lawsuit of *Thames v. Mars, Incorporated*, No. 3:22-cv-04145-JD (N.D. Cal.), filed on July 15, 2022, and pending before Judge James Donato. Plaintiff alleges that use of TiO2 in SKITTLES® violates Illinois consumer protection laws and constitutes various types of fraud, unjust enrichment, and breaches of implied and express warranty and the federal Magnuson-Moss Warranty Act. Compl. ¶¶ 61–158. He seeks damages, restitution, injunctive relief, and attorneys' fees on behalf of a nationwide class and, in the alternative, an Illinois subclass. Id. ¶ 50; id. pp. 29–30 (Request for Relief).

Given FDA's express approval of TiO2 in products like SKITTLES®, Plaintiff resorts to relying on recent regulatory actions by France and the European Commission to ban the use of TiO2 in food in France and Europe. Id. ¶¶ 3–5. Plaintiff also cites Mars's February 2016 announcement that it planned to remove artificial color additives from its human food products. Id. ¶¶ 1–2. According to Plaintiff, these various allegations establish that TiO2 is unsafe. Id. ¶¶ 1, 8–9.

Plaintiff appears to advance two different theories of liability. First, he alleges "use" liability, *i.e.*, that using TiO2 in SKITTLES® violates Illinois and federal law. See, e.g., Compl. ¶ 156. Second, he alleges "labeling" liability, *i.e.*, that the SKITTLES® labels deceptively omit that SKITTLES® are unsafe because of TiO2. See, e.g., id. ¶ 65. He alleges that SKITTLES® "are worthless" and that he and other putative class members "paid a premium . . . or otherwise paid more for [SKITTLES®]" than they would have paid "absent Defendant's omissions." Id. ¶¶ 36, 48.

---

[1] The Court may consider Exhibit A because it is a document "that [is] critical to the complaint and [is] referred to in it[]." Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The complaint premises its claims on allegations that the label is misleading. See, e.g., Compl. ¶¶ 7, 42–47. Plaintiff included a photograph of the back of the SKITTLES® label in his complaint, but the packaging is not flat, rendering the text partly illegible. See id. ¶ 7. Mars has attached as Exhibit A a flat, legible, high-resolution image of the front and back of the SKITTLES® label, so that the Court can see and review its complete text.

### E. Mars's Announcement Regarding Removal of Artificial Colors from Its Products.

On February 5, 2016, Mars announced that it planned to "remove all artificial colors from its human food products as part of a commitment to meet evolving consumer preferences." Ex. B.[2] It made clear that "[a]rtificial colors pose no known risks to human health or safety, but consumers today are calling on food manufacturers to use more natural ingredients in their products." Id. It cautioned that "[e]liminating all artificial colors from our human food portfolio is a massive undertaking" "that will take time and hard work to accomplish." Id. It estimated that "developing alternative colors, ensuring their safety and quality, obtaining regulatory approval, and introducing the new ingredients across the entirety of its human food portfolio around the world will take about five years." Id.

In January 2021, Mars explained that it planned to prioritize removal of artificial colors in Europe only. Mars cited recent findings "that consumer expectations regarding colors in food differ widely across markets and categories." Ex. C.[3] "For treats, [Mars] found that many of [its] consumers across the world do not, in fact, find artificial colors to be ingredients of concern." Id. Mars explained that "[t]his shift in approach is consistent with [its] stated desire to meet evolving consumer preferences, which was the bedrock of [its] 2016 announcement." Id.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to

---

[2] Exhibit B is a true and accurate copy of the 2016 press release that Plaintiff quotes in his complaint and alleges is misleading. See Compl. ¶¶ 1–2, 26. Thus, the Court may consider it on a motion to dismiss. See Geinosky, 675 F.3d at 745 n.1.

[3] On a motion to dismiss, a court may consider "information that is subject to proper judicial notice." Geinosky, 675 F.3d at 745 n.1. Exhibit C is publicly available on Mars's website, and courts may take judicial notice of websites under appropriate circumstances. See, e.g., Goplin v. WeConnect, Inc., 893 F.3d 488, 491 (7th Cir. 2018); United States ex rel. Suarez v. AbbVie, Inc., 503 F. Supp. 3d 711, 721–722 (N.D. Ill. 2020) (taking judicial notice of publicly available materials on defendant's website). The circumstances here are appropriate because Mars is requesting judicial notice solely to show the statement's public availability and content—which rebuts Plaintiff's allegation that Mars misled consumers with its 2016 press release—and not for the truth of any statements therein. See, e.g., Trudeau v. ConsumerAffairs.com, Inc., 2011 WL 3898041, at *2 (N.D. Ill. Sept. 6, 2011).

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and a claim must be supported by facts sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. In addition, because Plaintiff grounds his claims in fraud, his claims must also satisfy the heightened pleading requirements of Rule 9(b). *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441, 446–48 (7th Cir. 2011).

## ARGUMENT

**I.      Federal Law Preempts Plaintiff's Claims.**

Federal preemption "can take on three different forms: express preemption, field preemption, and conflict preemption." *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). Express preemption occurs "when a federal statute explicitly states that it overrides state or local law." *Id.* (citation omitted). Conflict preemption occurs "if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (citation omitted). "Under the doctrine of implied conflict preemption, '[t]he statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof.'" *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022).

**A.      The FDCA Preempts Plaintiff's Claims Premised on Use of TiO2.**

Plaintiff's "use" liability claims conflict with, and are therefore impliedly preempted by, the FDCA and FDA's TiO2 regulations. Congress delegated to FDA authority to regulate the safety of color additives in food: It has prohibited *any* color additive *unless* FDA determines under what conditions that additive "will be safe" and prescribes those conditions in a regulation. *See supra* p. 2; *see also Red v. Gen. Mills, Inc.*, 2015 WL 9484398, at *7 (C.D. Cal. Dec. 29,

6

2015) ("Congress granted the FDA authority to comprehensively regulate food safety by requiring the pre-market approval of food additives . . . ."); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 933 (N.D. Cal. 2015) (same). Following Congress's directive, FDA has determined that "titanium dioxide may be safely used for coloring foods generally" when it "does not exceed 1 percent by weight of the food." 21 C.F.R. § 73.575(c)(1). In so doing, FDA necessarily determined that "there is convincing evidence that establishes with reasonable certainty that no harm will result from the intended use of" TiO2. 21 C.F.R. § 70.3(i).

Plaintiff does not allege the concentration of TiO2 in SKITTLES® exceeds the concentration FDA has found to be "safe." Instead, he alleges TiO2 is unsafe even at that concentration, and that use of TiO2 as expressly authorized by FDA is nonetheless prohibited by state law. Compl. ¶ 90.

Plaintiff's claims are barred by implied conflict preemption. His attempt to use state law to bar the use of TiO2 in a manner expressly authorized by FDA would plainly "conflict[] with" and "frustrate[] the purposes" of the FDCA and FDA's TiO2 regulations. *See Cohen*, 46 F.4th at 1028 (citation omitted). Likewise, it would clearly pose "an obstacle to the accomplishment and execution of" Congress's "purposes and objectives" in delegating plenary authority over safety determinations and approval of color additives to FDA. *Aux Sable*, 526 F.3d at 1033 (citation omitted); *see also* 21 U.S.C. § 393(b)(2) (FDA shall "protect the public health by ensuring that . . . . foods are safe"); *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 950–54 (N.D. Cal. 2019) (state law claims alleging phosphorous additives are unsafe impliedly preempted by FDA regulation expressly permitting their use in food until 2018); *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1071–74 (N.D. Cal. 2016) (same).

Indeed, Congress gave FDA authority to approve the "safe" use of color additives in food to prevent plaintiffs from upending the United States food industry through state-specific tort liability. "It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products

7

in more than one state crazy." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). Individual studies constantly emerge positing long-term health risks posed by common ingredients, including refined grains, trans fats, nitrates, sodium, and MSG. Plaintiff's "use" theory—that the existence of such studies alone makes foods that contain these ingredients unsafe—would "frustrate" "congressional objective[s]" regarding broad categories of foods, ranging from potato chips to deli meats, white bread to Chinese food, and diet soft drinks to pickles. A*ux Sable*, 526 F.3d at 1034.

"The Supreme Court's preemption case law indicates that regulatory situations in which an agency is required to strike a balance between competing statutory objectives lend themselves to a finding of conflict preemption." *Farina v. Nokia Inc.*, 625 F.3d 97, 123 (3d Cir. 2010). For example, in *Cohen*, the Ninth Circuit recently held that "the FCC's regulations . . . setting upper limits on the levels of permitted RF radiation, preempt state laws that impose liability premised on levels of radiation below the limits set by the FCC." 46 F.4th at 1031. That is precisely the situation here. The FDCA and FDA regulations preempt Plaintiff's "use" claims.

**B.     The FDCA Preempts Plaintiff's Claims Premised on TiO2 Labeling.**

Plaintiff's claims premised on "labeling" liability are expressly and impliedly preempted.

– ***Express preemption***:  In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA"), Pub. L. No. 101-535, 104 Stat. 2353 (1990), which amended the FDCA to "prevent State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients." *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958 (N.D. Ill. 2010) (quotations omitted).  The NLEA contains several express preemption provisions. See 21 U.S.C. § 343-1(a).  These provisions preempt state law requirements "not identical to" FDA-regulated food labeling. *See id.* "[N]ot identical to" "means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling" that are "not imposed or contained in the applicable provision[s]." 21 C.F.R. § 100.1(c)(4); *Turek*, 754 F. Supp. 2d at 959.

Among other things, the NLEA expressly preempts state law requirements not identical to FDA regulations governing the disclosure of artificial coloring. *See* 21 U.S.C. § 343-1(a)(3) (citing 21 U.S.C. § 343(k) (artificial coloring)). In addition to mandating how TiO2 must be disclosed in the ingredients panel, *supra* p. 2 (citing 21 C.F.R. § 101.22(k)(2)), FDA regulations specify where the ingredients panel should be placed ("either the principal display panel or the information panel," 21 C.F.R. § 101.4(a)(1)), and where color additives like TiO2 should be listed in the ingredients panel ("in descending order of predominance by weight," *id.*).

SKITTLES® labeling complies with these requirements by expressly stating "COLORS (TITANIUM DIOXIDE . . . )" in the ingredients panel, and Plaintiff does not allege otherwise. *Supra* p. 3. Plaintiff's suggestion that Mars must disclose TiO2 differently (and potentially elsewhere) in the limited space available on the SKITTLES® package in order to "warn consumers that [SKITTLES®] contain[] TiO2," Compl. ¶ 41, is "not identical to" and therefore is expressly preempted by the NLEA and FDA regulations. This is especially true where FDA regulations do not even require TiO2 to be disclosed by name at all, let alone in some unspecified location on the package based on Plaintiff's preference.

– ***Implied Conflict Preemption***: As noted above, Plaintiff does not dispute that SKITTLES® comply with FDA's TiO2 regulations. Yet, Plaintiff argues that state law requires Mars to tell consumers that SKITTLES® are not "safe for human consumption" because they contain TiO2. *See, e.g.*, Compl. ¶¶ 43, 95. But FDA's determinations impliedly preempt such arguments. FDA has determined, among other things, that TiO2 "may be safely used for coloring foods" at concentrations of less than 1%, 21 C.F.R. § 73.575(c)(1), that "there is convincing evidence that establishes with reasonable certainty that no harm will result from" such use, *id.* § 70.3(i), and that such use will not "promote deception of the consumer" or "otherwise result in misbranding or adulteration," 21 U.S.C. § 379e(b)(5)(B), (b)(6).

In view of these determinations, it would be false and misleading for Mars to declare that TiO2 nonetheless makes SKITTLES® "unsafe for human consumption." And for Plaintiff to prevail on his "labeling" claims, this Court would necessarily have to contradict the FDA's

safety determinations. That is, the Court would have to hold that TiO2 *cannot* "be safely used for coloring foods," that "there *is* convincing evidence" that harm will result from use of TiO2, and that using TiO2 without such a warning would "promote deception of the consumer" and "result in misbranding or adulteration."

Plainly, such determinations would "conflict" with and "stand as an obstacle" to FDA's TiO2 regulations and Congress's objectives in delegating to FDA authority to determine whether and how color additives may be used in food. See *Aux Sable*, 526 F.3d at 1033. The FDCA impliedly preempts Plaintiff's labeling claims.

## II. Illinois's Safe Harbor Provisions Bar Plaintiff's Claims.

The Illinois Consumer Fraud and Deceptive Business Practices Act, one of the principal state laws upon which Plaintiff relies, does not apply to "actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). In *Turek*, a case with claims similar to this one, the Seventh Circuit held that "[t]he disclaimers that the plaintiff wants added to the labeling of the defendants' inulin-containing chewy bars are not identical to the labeling requirements imposed on such products by the [NLEA], and so they are barred." 662 F.3d at 427. As a result, the Court found that because of its Safe Harbor provision, the "Illinois Consumer Fraud and Deceptive Business Practices Act does not apply" since the "representations on the packaging of the defendants' chewy bars concerning dietary fiber are specifically authorized by the federal statutes and regulations . . . discussed." *Id.* Similarly, the Illinois Uniform Deceptive Trade Practices Act, on which Plaintiff relies, states that it "does not apply to conduct in compliance with the orders or rules of or a statute administered by a Federal . . . governmental agency." 815 ILCS 510/4(1).

As SKITTLES® packaging is specifically authorized by federal law, Plaintiff is barred from bringing a claim under both the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Uniform Deceptive Trade Practices Act. See *supra*, Part I.B. Federal law expressly permits the use of TiO2 as a color additive; so too, therefore, does state law, because

10

the Illinois Food, Drug and Cosmetic Act ("IFDCA") adopts all FDA regulations as state regulations—including FDA's TiO2 regulations. *See* 410 ILCS 620/21(e) ("All color additive regulations and supplements thereto or revisions thereof adopted under authority of the Federal Food, Drug and Cosmetic Act are the color additive regulations in this State."). For the same reason, the IFDCA also expressly permits TiO2 to be declared in labeling in the manner described above. *Supra*, Part I.B. Thus, as a matter of law, Illinois permits Mars to use TiO2 in SKITTLES®.

### III. Plaintiff Lacks Article III Standing.

In addition to asserting claims that are preempted and are barred by the safe harbor doctrine, Plaintiff fails to allege an injury sufficient to establish standing under Article III. Article III requires Plaintiff to show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (quotations omitted). The alleged injury must be "concrete and particularized" and "actual or imminent." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element of standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotations omitted).

The Complaint does not establish standing. Plaintiff fails to allege any present physical injury or risk of future injury that his consumption of the product caused. His threadbare economic injury allegations fall equally short.

#### A. Plaintiff Alleges No Physical Injury or Plausible Risk of Future Harm.

Perhaps to avoid dooming class certification, Plaintiff does not allege he suffered any physical injury from consuming SKITTLES®. His generalized allegations about health risks or studies cannot substitute for the injury requirement. "A concrete injury is a real injury—that is, one that actually exists" or which poses a "real risk of concrete harm." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899–900 (7th Cir. 2020). Plaintiff has not alleged either a "real injury" or a "real risk of concrete harm." *See id.*

11

The Complaint alleges generally that "consumers who purchase [SKITTLES®] are at a heightened risk of a host of health effects" because of the "ability of a chemical substance to change DNA." Compl. ¶ 8. The Complaint further alleges that SKITTLES® "are not safe" because they "contain heightened levels of titanium dioxide." Id. ¶ 9. Such threadbare allegations fail to establish what "heightened levels" even means, let alone that the risk of disease is certainly impending or that Plaintiff faces a substantial risk of future harm. See McGee v. S-L Snacks, Nat'l, 982 F.3d 700, 709 (9th Cir. 2020). This is particularly true given that (1) Plaintiff does not (and cannot) allege that TiO2 in SKITTLES® exceeds FDA's one-percent threshold and (2) FDA has already concluded that such levels are safe for human consumption. Supra pp. 2–3.

Plaintiff's allegations are analogous to *McGee*, which rejected an attempt to establish standing by raising generalized health risks and studies about the danger of trans fat in Pop Secret popcorn. See 982 F.3d at 703. The *McGee* court concluded that the plaintiff did not plausibly allege that she actually suffered injuries from ingesting trans fat. Id. at 708 (Plaintiff "does not allege that she has undergone medical testing or examination to confirm that she suffers from these conditions or that they were caused by her consumption of Pop Secret"). The court further held that "the studies cited in the complaint . . . are simply too speculative to support standing, even at the pleading stage." Id. at 709.

So too here. Plaintiff has alleged only speculative health risks and studies, not that he has suffered, or faces the "real risk" of suffering, any concrete harm from his consumption of the TiO2 in SKITTLES®. Accordingly, Plaintiff's allegations of future injury fail to demonstrate that Plaintiff "suffer[ed] a concrete and particularized injury" and he "therefore lacks standing under Article III." Bryant v. Compass Grp. USA, Inc., 958 F.3d 617, 626 (7th Cir. 2020).

B.  **Plaintiff Fails To Allege a Plausible Economic Injury.**

Plaintiff also fails to allege sufficient plausible facts to support an economic injury theory. *First*, plaintiff's benefit-of-the-bargain theory fails to establish economic injury for the same reasons it failed in *McGee*. Echoing the plaintiff in *McGee*, Plaintiff asserts that he

bargained for a product that was "safe for consumption," but was deprived of the benefit of the bargain because SKITTLES® "contain[] dangerous substances with serious health consequences." Compl. ¶ 37. Just as with the Pop Secret popcorn in *McGee*, Plaintiff does not allege that Mars "made . . . representations about [SKITTLES®'] safety." 982 F.3d at 705. And just as in *McGee*, such a theory is "particularly" infirm because the label disclosed the allegedly harmful substance—in *McGee*, trans fat, and here, TiO2. Id. at 706. Thus, because Plaintiff failed to show that "she did not receive a benefit for which she actually *bargained*," rather than "the benefit she *thought* she was obtaining," id. (citation omitted), Plaintiff lacks standing.

Similarly, in *Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012), the plaintiff argued he would not have purchased fruit juices had he known they contained "'material and significant' levels of arsenic and lead," which were not disclosed on the products' labels. Id. at *1 (citation omitted). The court dismissed the suit for lack of standing because the plaintiff did not allege, among other things, that the arsenic and lead levels in the juices exceeded FDA's guidelines for safe consumption. Id. at *7. As the court observed, absent some plausible allegation supporting an economic injury claim, "plaintiff only alleges that he purchased and consumed the fruit juices [and] that the levels of lead and arsenic in defendant's product were unsatisfactory to him." Id. at *7.

The reasoning of *McGee* and *Boysen* is dispositive. Whatever Plaintiff assumed regarding the safety of TiO2 in SKITTLES®, those "assumptions were not included in the bargain." McGee, 982 F.3d at 706. Plaintiff does not allege that the SKITTLES® label affirmatively misrepresents the safety of SKITTLES®. He also does not allege that the concentration of TiO2 in SKITTLES® exceeded FDA limits. Those facts alone defeat Plaintiff's injury theory. Moreover, the label explicitly lists TiO2 as an ingredient. Plaintiff therefore received the exact product for which he bargained: a candy that uses TiO2 for coloring.

*Second*, Plaintiff's argument that he overpaid for SKITTLES®—which are allegedly "worthless" because they contain TiO2—fails for the same reasons that argument failed in *McGee*. Compl. ¶¶ 36, 48. In *McGee*, the plaintiff alleged that she "suffered loss in an amount

13

equal to the amount she paid for Pop Secret because Pop Secret is not fit for human consumption." 982 F.3d at 706 (quotations omitted). The Ninth Circuit held this failed to establish injury because there were no "false representations" about Pop Secret and "Pop Secret's nutritional label disclosed the presence of artificial trans fat." Id. at 707–08. So too here: The SKITTLES® label makes no false representations and expressly discloses the presence of TiO2. Plaintiff cannot plausibly allege he overpaid for SKITTLES®.

    C.    **Plaintiff Lacks Standing To Seek Injunctive Relief.**

As to injunctive relief more specifically, Plaintiff "cannot pursue [it] because [he has] not alleged a real and immediate threat of future violations of [his] rights." *Scherr v. Marriott Int'l*, 703 F.3d 1069, 1074 (7th Cir. 2013) (internal quotations and citations omitted). In *Camasta v. Jos. A. Bank Clothiers, Inc.*, the Seventh Circuit held that once a plaintiff is aware of a defendant's "sale practices, he is not likely to be harmed by the practices in the future." 761 F.3d 732, 741 (7th Cir. 2014). Accordingly, "[c]ourts in this district have picked up that line of reasoning and concluded that allegations of deceptive practices, without more, do not support standing for injunctive relief." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020).

Thus, in *Rice v. Dreyer's Grand Ice Cream, Inc.*, the court held that "[b]ecause Rice is aware of the presence of vegetable oil in the product, he faces no risk of future harm from being deceived by the failure of the product's front label to mention vegetable oil, and he therefore lacks standing to seek prospective injunctive relief." 2022 WL 3908665, at *2 (N.D. Ill. Aug. 30, 2022). Plaintiff knows that SKITTLES® contain TiO2 because it says so on the label. Compl. ¶ 7. He can readily ascertain whether the product still contains TiO2 *before* deciding whether to purchase it again. Accordingly, Plaintiff has not provided a "concrete basis to conclude that . . . [he] will or must purchase the product again in the future *and* [will] be deceived," thus lacking standing to seek injunctive relief. *Rice*, 2022 WL 3908665, at *2 (citations omitted; emphasis added).

14

IV.     **Plaintiff Fails Plausibly To Allege Deception.**

Because every one of his claims sounds in deceptive conduct, Plaintiff must allege deception with particularity. See Fed. R. Civ. P. 9(b); *Pirelli*, 631 F.3d at 441, 446–48. See also *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002) (requiring Illinois statutory fraud plaintiffs to allege actual deception through specific representations or omissions, proximate cause, and actual reliance as an essential element of a claim). Plaintiff has not plausibly or particularly alleged any such deception.

Plaintiff's "use" and "labeling" liability theories both depend on SKITTLES® being deceptively marketed as "safe for human consumption when they are not." Compl. ¶ 43. Plaintiff has not, however, plausibly pled that SKITTLES® are *unsafe* for human consumption or that they cause health problems. He does not allege that he or anyone else has suffered a cognizable physical injury. At most, Plaintiff has alleged that there is scientific debate over whether TiO2 exposure contributes to long-term health problems. See id. ¶¶ 30–31. This is not enough. Simply put, Plaintiff does not allege that he or anyone else will get sick from eating the TiO2 in a bag of SKITTLES®—now or in the future. See supra Part III.A; *Boysen*, 2012 WL 2953069, at *6–7 (plaintiff failed plausibly to allege that arsenic and lead in fruit juices at FDA-approved levels made the juices unsafe for consumption).

Plaintiff also falsely alleges that Mars "commit[ted] to U.S. consumers" to remove TiO2 from SKITTLES® and then reneged without "tell[ing] consumers that . . . it did not remove TiO2." Compl. ¶ 35. The announcement of future plans is not a statement that TiO2 has been removed from SKITTLES®—to the contrary, as Plaintiff admits, the label continues to disclose its use. Further, Mars *did* tell consumers that it planned to prioritize removal of all artificial colors in Europe only. Ex. C. Plaintiff cannot plausibly allege that these statements or actions were deceptive.

## CONCLUSION

For the foregoing reasons, Mars respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

15

Dated: September 30, 2022  Respectfully submitted,

**SCHARF BANKS MARMOR LLC**
*/s/ George D. Sax*
George D. Sax (No. 6279686)
333 W. Wacker Dr. Suite 450
Chicago, Illinois 60606
Tel.: (312) 726-6000
Email: gsax@scharfbanks.com

**WILLIAMS & CONNOLLY LLP**
Stephen D. Raber (*pro hac vice*)
Liam J. Montgomery (*pro hac vice*)
Ramon J. Ryan (*pro hac vice*)
680 Maine Avenue, SW
Washington, DC 20024
Telephone: 202-434-5000
Facsimile: 202-434-5029
Email: sraber@wc.com
       lmontgomery@wc.com
       rryan@wc.com

*Attorneys for Defendant Mars, Incorporated*

## CERTIFICATE OF SERVICE

  The undersigned attorney hereby certifies that he caused a true and correct copy of the foregoing Defendants' Motion to Dismiss, to be filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record on this 30th day of September 2022.

                  /s/ George D. Sax

## SERVICE LIST

Bret K. Pufhal
Elizabeth C. Chavez
Kathleen C. Chavez
Peter L. Currie
Foote, Mielke, Chavez & O'Neil, LLC
10 W. State Street, Suite 200
Geneva, IL 60134
630-232-7450
Email: bkp@fmcolaw.com
Email: ecc@fmcolaw.com
Email: kcc@fmcolaw.com
Email: plc@fmcolaw.com

*Counsel for Plaintiff, William Mignin, III*